BM:BGK
F.# 2019V02754

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        Plaintiff,

  - against -

THE REAL PROPERTY AND PREMISES
KNOWN AS: DEED NO. 18,877; CALLE PASEO
DE LOS VIRREYES, 4283, LOT 21, MZA 41,
FRACCIONAMIENTO VILLA
UNIVERSITARIA, ZAPOPAN, JALISCO,
MEXICO; CLAVE CATASTRAL:
12014H223400370000, HELD IN THE NAME OF
HECTOR RAFAEL CARO ELENES, WITH A
USUFRUCT GRANTED FOR LIFE TO RAFAEL
CARO QUINTEROAND ELIZABETH ELENES
DE CARO;

THE REAL PROPERTY AND PREMISES
KNOWN AS: DEED NO. 84; PROPERTY ONCE
KNOWN AS "RANCHO DEL GORUPO" IN

CORRECTED[1] VERIFIED
COMPLAINT IN REM

Civil Docket No. 19-5748 (ENV)

---

[1] This Corrected Verified Complaint In Rem corrects one typographical error in the Verified Complaint In Rem filed on October 11, 2019 in the above-captioned matter (the "October 2019 Complaint"). The October 2019 Complaint described one of the real properties as:

"The real property and premises known as: Deed No. 8186; Calle Enrique Gomez Carrillo 531**3**, Lote 4A, Mza 157, Fraccionamiento Vallarta Universidad, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H114700050000, held in the name of Roxana Elizabeth Caro Elenes."

The correct description is:

"The real property and premises known as: Deed No. 8186; Calle Enrique Gomez Carrillo 531**4**, Lote 4A, Mza 157, Fraccionamiento Vallarta Universidad, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H114700050000, held in the name of Roxana Elizabeth Caro Elenes."

ZAPOPAN/GUADALAJARA, JALISCO, MEXICO, HELD IN THE NAMES OF HECTOR RAFAEL, ROXANA ELIZABETH, HENOCH EMILIO AND MARIO YIBRAN, ALL SURNAMES CARO ELENES, WITH A USUFRUCT GRANTED FOR LIFE TO RAFAEL CARO QUINTERO AND ELIZABETH ELENES DE CARO;

THE REAL PROPERTY AND PREMISES KNOWN AS: DEED NO. 9859; AVENIDA MELCHOR OCAMPO, 468 BODEGA (LOCAL) 21, FRACCIONAMIENTO MERCADO DE ABASTOS NORTE, MERCADO EL CAMPESINO, 59, 21, 45140, ZAPOPAN, JALISCO, MEXICO; CLAVE CATASTRAL: 12014I005900290000, HELD IN THE NAMES OF HECTOR RAFAEL, ROXANA ELIZABETH, HENOCH EMILIO AND MARIO YIBRAN, ALL SURNAMES CARO ELENES, WITH A USUFRUCT GRANTED FOR LIFE TORAFAEL CARO QUINTERO AND ELIZABETH ELENES DE CARO;

THE REAL PROPERTY AND PREMISES KNOWN AS: DEED NO. 2576; A FRACTION OF THE RUSTIC PROPERTY LOCATED IN THE TOWN OF ZAPOPAN, JALISCO, MEXICO CALLED "EL TIGRE," "NIXTICUILF," OR "LA SALITRERA," HELD IN THE NAMES OF HECTOR RAFAEL, ROXANA ELIZABETH, HENOCH EMILIO, AND MARIO YIBRAN, ALL WITH THE SURNAMES CARO ELENES, WITH A USUFRUCT GRANTED FOR LIFE TO RAFAEL CARO QUINTERO AND ELIZABETH ELENES DE CARO;

THE REAL PROPERTY AND PREMISES KNOWN AS: DEED NO. 8527; CALLE SAGITARIO 5289-8, CONDOMINIO SAGITARIO, FRACCIONAMIENTO RESIDENCIAL ARBOLDEAS, ZAPOPAN, JALISCO, MEXICO; CLAVE CATASTRAL: 12014H332600170008, HELD IN THE NAME OF ROXANA ELIZABETH CARO ELENES;

THE REAL PROPERTY AND PREMISES
KNOWN AS: DEED NO 8527; CALLE
SAGITARO 5289-9, CONDOMINIO
SAGITARIO, FRACCIONAMIENTO
RESIDENCIAL ARBOLDEAS, ZAPOPAN,
JALISCO, MEXICO;CLAVE CATASTRAL:
12014H332600170009, HELD IN THE NAME OF
ROXANA ELIZABETH CARO ELENES;

THE REAL PROPERTY AND PREMISES
KNOWN AS: DEED NO. 8187; CALLE LUIGI
PIRANDELLO 5397, LOTE 29B, MZA 145,
FRACCIONAMIENTO VALLARTA
UNIVERISDAD, ZAPOPAN, JALISCO,
MEXICO; CLAVE CATASTRAL:
12014H114500370000, HELD IN THE NAME OF
ROXANA ELIZABETH CARO ELENES; and

THE REAL PROPERTY AND PREMISES
KNOWN AS: DEED NO. 8186; CALLE
ENRIQUE GOMEZ CARRILLO 5314, LOTE 4A,
MZA 157, FRACCIONAMIENTO VALLARTA
UNIVERSIDAD, ZAPOPAN, JALISCO,
MEXICO; CLAVE CATASTRAL:
12014H114700050000, HELD IN THE NAME OF
ROXANA ELIZABETH CARO ELENES.

Defendants in rem.

- - - - - - - - - - - - - - - - - - - - - X

Plaintiff, the United States of America, by its attorney, JACQUELYN M. KASULIS, Acting United States Attorney for the Eastern District of New York, alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1. This is a civil action in rem to forfeit and condemn to the use of the United States, all right and title to the above-captioned real properties located in the Country of the United Mexican States (the "Estados Unidos Mexicanos," hereinafter, "Mexico"),

including all appurtenances, improvements and attachments thereon, as well as all leases, rents and profits therefrom, and all proceeds traceable thereto, pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

## JURISDICTION AND VENUE

2. This court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355.

3. Venue lies in the Eastern District of New York pursuant to 28 U.S.C. § 1355(b)(2) because the property is located in a foreign country and is subject to forfeiture under the laws of the United States. Further, pursuant to 28 U.S.C. § 1355(b)(1) and 21 U.S.C. § 881(j), the forfeiture action may be filed in this district.

## THE DEFENDANTS IN REM

4. The Defendants in rem consist of the following eight pieces of real property (hereafter, the "Defendant Properties"), located in and/or around Guadalajara, Mexico:

   a. The real property and premises known as: Deed No. 18,877; Calle Paseo de los Virreyes, 4283, Lot 21, Mza 41, Fraccionamiento Villa Universitaria, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H223400370000, held in the name of Hector Rafael Caro Elenes, with a usufruct granted for life to Rafael Caro Quintero and Elizabeth Elenes de Caro (hereafter, "Defendant Property One");

   b. The real property and premises known as: Deed No. 84, Property once known as "Rancho del Gorupo" in Zapopan/Guadalajara, Jalisco, Mexico; held in the names of Hector Rafael, Roxana Elizabeth, Henoch Emilio and Mario Yibran, all surnames Caro Elenes, with a usufruct granted for life to Rafael Caro Quintero and Elizabeth Elenes de Caro (hereafter, "Defendant Property Two");

4

c. The real property and premises known as: Deed No. 9859. Avenida Melchor Ocampo, 468 Bodega (Local) 21, Fraccionamiento Mercado de Abastos Norte, Mercado el Campesino, 59, 21, 45140, Zapopan, Jalisco, Mexico; Clave Catastral: 12014I005900290000, held in the names of Hector Rafael, Roxana Elizabeth, Henoch Emilio and Mario Yibran, all with the surnames Caro Elenes, with a usufruct granted for life to Rafael Caro Quintero and Elizabeth Elenes de Caro (hereafter, "Defendant Property Three");

d. The real property and premises known as: Deed No. 2576; a fraction of the rustic property located in the town of Zapopan, Jalisco, Mexico called "El Tigre," "Nixticuilf," or "La Salitrera," held by Hector Rafael, Roxana Elizabeth, Henoch Emilio, and Mario Yibran, all with the surnames Caro Elenes, with a usufruct granted for life to Rafael Caro Quintero and Elizabeth Elenes de Caro (hereafter, "Defendant Property Four");

e. The real property and premises known as: Deed No. 8527; Calle Sagitario 5289-8, Condominio Sagitario, Fraccionamiento Residencial Arboldeas, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H332600170008, held in the name of Roxana Elizabeth Caro Elenes (hereafter, "Defendant Property Five");

f. The real property and premises known as: Deed No 8527; Calle Sagitario 5289-9, Condominio Sagitario, Fraccionamiento Residencial Arboldeas, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H332600170009, held in the name of Roxana Elizabeth Caro Elenes (hereafter, "Defendant Property Six");

g. The real property and premises known as: Deed No. 8187; Calle Luigi Pirandello 5397, Lote 29B, Mza 145, Fraccionamiento Vallarta Univerisdad, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H114500370000, held in the name of Roxana Elizabeth Caro Elenes (hereafter, "Defendant Property Seven"); and

h. The real property and premises known as: Deed No. 8186; Calle Enrique Gomez Carrillo 5314, Lote 4A, Mza 157, Fraccionamiento Vallarta Universidad, Zapopan, Jalisco, Mexico; Clave Catastral: 12014H114700050000, held in the name of Roxana Elizabeth Caro Elenes (hereafter, "Defendant Property Eight").

## STATUTORY BACKGROUND

5. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property which constitutes or is derived from proceeds traceable to any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which includes a violation of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq., or a conspiracy to commit such an offense, is subject to forfeiture.

6. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to such an exchange, are subject to forfeiture to the United States.

## FACTS

7. The Caro Quintero Drug Trafficking Organization (the "Caro Quintero DTO") was a marijuana, methamphetamine and cocaine trafficking organization based in or around Guadalajara, Mexico.

8. During the period in or about and between January 1980 and March 2015, the Caro Quintero DTO was involved in the transportation of multi-ton quantities of marijuana, multi-kilogram quantities of methamphetamine and multi-kilogram quantities of cocaine from Mexico into the United States. The Caro Quintero DTO coordinated the production, purchase and transfer of marijuana, methamphetamine and cocaine. The vast majority of drugs trafficked by the Caro Quintero DTO were ultimately imported into the United States.

9. As part of its operation, the Caro Quintero DTO also employed "sicarios," or hitmen, who carried out various acts of violence, including kidnapping and

6

murder. The Caro Quintero DTO used these acts of violence to collect debts and to promote and enhance the prestige, reputation and position of the organization.

10. Rafael Caro Quintero, also known as "RCQ," was a principal leader of the Caro Quintero DTO. RCQ is a fugitive from various United States indictments that charge him with, among other things, narcotics trafficking and the 1985 kidnapping, torture, and murder of Enrique Camarena, a Special Agent with the Drug Enforcement Administration ("DEA").

Eastern District of New York Indictment

11. On or about April 24, 2015, RCQ was indicted by a federal grand jury sitting in the Eastern District of New York. The indictment, <u>United States v. Rafael Caro Quintero, et al.</u>, Docket Number 15-CR-208, charged RCQ with engaging in a continuing criminal enterprise, as defined by 21 U.S.C. § 848(c); international marijuana distribution conspiracy, as defined in 21 U.S.C. § 960(a)(3); and international methamphetamine and cocaine distribution conspiracy, as defined in 21 U.S.C. § 960(a)(3).

12. In connection with the continuing criminal enterprise, the indictment sets forth seven violations as part of a continuing series of criminal acts undertaken by RCQ, in concert with five or more other persons with respect to whom RCQ occupied a supervisory and management position, and from whom RCQ obtained substantial income and resources. The continued violations included the following: (a) an international marijuana trafficking conspiracy that took place during the period in or about and between January 1980 and March 2015 and involved 1,000 kilograms or more of a substance containing marijuana; (b) the murder of DEA Special Agent Enrique "Kiki" Camarena on or about February 1985; (c) the international distribution of approximately 4,500 kilograms of

7

marijuana on or about February 21, 2015; (d) an international methamphetamine and cocaine trafficking conspiracy that took place in or about and between February 1, 2015 and March 5, 2015, and involved the manufacture and distribution offense of 50 grams or more of methamphetamine, a schedule II controlled substance, and 500 grams or more of a substance containing cocaine, a Schedule II controlled substance; (e) the international marijuana distribution of approximately 460 kilograms of marijuana on or about March 4, 2015; (f) the international methamphetamine distribution of approximately 22 kilograms of methamphetamine on or about March 5, 2015; and (g) the international cocaine distribution of approximately 1.9 kilograms of cocaine on or about March 5, 2015.

<u>Other Judicial Districts</u>

13. On or about July 30, 1991, a grand jury sitting in the Central District of California, issued an indictment in <u>United States v. Rafael Caro-Quintero, *et al.*</u>, Docket Number 87-CR-422, charging RCQ and other members of the Caro-Quintero DTO with, <u>inter alia</u>, conspiracy to commit racketeering, and racketeering, to wit: kidnapping, including of an agent of the United States Drug Enforcement Administration; murder in aid of racketeering; importation and distribution of cocaine, and multi-tons of marijuana being cultivated in marijuana fields in Zacatecas, Mexico, into the Central District of California.

14. On or about July 14, 1998, a grand jury sitting in the District of Arizona issued an indictment in <u>United States v. Rafael Caro-Quintero, *et al.*</u>, Docket Number 88-CR-256, against RCQ and other members of the Caro-Quintero DTO. The indictment charged RCQ and others with, among other things: racketeering; conspiracy to import multi-ton shipments of marijuana from Mexico into the United States, including, into the District of Arizona; importation of marijuana; transporting of monetary instruments of more $10,000, in

an aggregate amount in excess of $2,800,000 in United States currency; bribery of public officials; continuing criminal enterprise; importation of more than 374 kilograms of cocaine into the United States; and distribution of cocaine.

## THE DEFENDANT PROPERTIES

15. As part of the RCQ investigation, law enforcement learned through various sources, including cooperating witnesses and sources who have interacted directly with RCQ and RCQ's family members, that RCQ used proceeds from the sale of the illegal substances to purchase real estate in and around Guadalajara, Mexico. In fact, RCQ admitted in a sworn declaration that he used the cash proceeds of his illegal drug activity to purchase properties in nominee names, including those of his family members.

RCQ's Sworn Declaration

16. On or about April 10, 1985, RCQ was incarcerated in the Northern Preventive Prison of the Federal District in Mexico City, Mexico, based on Mexican charges of, among other things, the trafficking of narcotics. At that time, RCQ provided a sworn statement to Mexican law enforcement agents of the Auxiliary Federal Public Ministry. In that statement, RCQ admitted that, since approximately 1978, he had been engaged in trafficking of drugs. With the cash proceeds of his illegal drug activity, RCQ stated that he purchased properties in nominee names, such as in the name of his mother, wife, ex-wife, children and friends. RCQ provided to the investigators a list of some of these properties. Although the list did not include the Defendant Properties, the list indicated that RCQ had placed the properties, including numerous personal residences, in the names of various family members including those of his ex-wife, his wife, his then-nine year old son and his

9

then-six year old daughter. Properties also included a ranch and factories placed in the name of his then-nine year old son, and a ranch placed in the name of his mother.

Cooperating Witness

17. During the course of the investigation, law enforcement authorities spoke with a cooperating witness ("CW"). In 2018, CW pleaded guilty to an international narcotics conspiracy to distribute cocaine into the United States during the years 1985 through 2012, in violation of 21 U.S.C. § 963. CW is cooperating with the government pursuant to a cooperation agreement in the hope of receiving a reduced sentence. Information provided by CW has been independently corroborated and CW has never been known to provide false or misleading information.

18. In an interview with law enforcement in December 2018, CW explained that he/she met with and/or was employed by RCQ and/or by members of his family at various times during the period 1985 through 1992. As a trusted confidant in RCQ's organization, CW stated that he/she was aware that RCQ was involved in narcotics trafficking. CW also has personal knowledge of RCQ's real estate holdings at various times during his/her tenure with RCQ based upon conversations with individuals who had direct knowledge of the ownership of real estate held in the name of RCQ's family.

19. RCQ informed the CW that RCQ grew-up in a family that had limited means. RCQ also informed the CW that he invested his money in the purchasing of land and had a house that was large enough for 25 of RCQ's relatives and friends. CW estimated that RCQ owned over thirty properties during the course of CW's tenure with RCQ's organization. Further, the CW noted that none of RCQ's properties were placed in RCQ's name. Instead, RCQ would place them in the names of his children and wife to conceal

RCQ's ownership of the properties and RCQ's use of proceeds from his illegal drug activities to purchase them.

20. The CW also stated to law enforcement that he/she was aware that the Office of Foreign Assets Control ("OFAC") designated RCQ's family members and others, placing them on the OFAC list.

21. OFAC, an office of the United States Department of the Treasury, administers and enforces economic sanctions programs through the Foreign Narcotics Kingpin Designation Act, pursuant to 21 U.S.C. §§ 1901-1908 and the implementing regulations of 31 C.F.R. Part 598 ("Kingpin Act"). The Kingpin Act protects the U.S. financial system by denying significant foreign narcotics traffickers, their businesses, and operatives access to the U.S. financial system. The Kingpin Act generally prohibits all trade and transactions between the traffickers and the United States. Law enforcement confirmed that on June 12, 2013, RCQ's family members, including Hector Rafael Caro Elenes, Roxana Elizabeth Caro Elenes, Henoch Emilio Caro Elenes, and Mario Yibran Caro Elenes -- his wife, Maria Elizabeth Elenes Lerma, and his daughter-in-law, Denisse Buenrostro Villa, were designated by OFAC under the Kingpin Act.

Cooperating Source

22. During the course of the investigation, law enforcement agents spoke with a cooperating source ("CS") whose information had been corroborated, in part, by independent evidence. The CS has interacted directly and had conversations with RCQ and RCQ's family members and, through these interactions, gained knowledge of RCQ's real estate holdings. The CS confirmed that RCQ's children include Henoch Emilio Caro Elenes, Mario Yibran Carlos Elenes, Roxana Elizabeth Caro Elenes, and Hector Rafael Caro Elenes.

11

23. According to the CS, RCQ placed multiple properties in the names of his children and then-wife, Maria Elizabeth Elenes Lerma, to prevent the Mexican law enforcement authorities from seizing RCQ's properties. The CS also stated that RCQ was an international narcotics trafficker and that all of the Defendant Properties were purchased with drug proceeds.

The Individual Properties

24. Based, in part, on information provided by RCQ, the CW, and the CS, law enforcement determined that the following properties were purchased by RCQ with drug proceeds and placed in family members names:

a. Defendant Property One, Deed No. 18,877, is held in the name of Hector Rafael Caro Elenes, RCQ's son. RCQ purchased this property on or about March 9, 1983.

b. Defendant Property Two, Deed No. 84, is held in the names of Hector Rafael Caro Elenes, Roxana Elizabeth Caro Elenes, Henoch Emilio Caro Elenes, and Mario Yibran Caro Elenes, all of whom are RCQ's children. RCQ purchased this property on or about September 19, 1983.

c. Defendant Property Three, Deed No. 9859, is held in the names of Hector Rafael Caro Elenes, Roxana Elizabeth Caro Elenes, Henoch Emilio Caro Elenes, and Mario Yibran Caro Elenes, all of whom are RCQ's children. RCQ purchased this property on or about July 9, 1984.

d. Defendant Property Four, Deed No. 2576, is held in the names of Hector Rafael Caro Elenes, Roxana Elizabeth Caro Elenes, Henoch Emilio Caro Elenes, and

Mario Yibran Caro Elenes, all of whom are RCQ's children. RCQ purchased this property on or about May 30, 1984.

  e. Defendant Property Five, Deed No. 8527 (Condominium No. 8), is held in the name of Roxana Elizabeth Caro Elenes, RCQ's daughter. RCQ purchased this property on or about July 15, 1983.

  f. Defendant Property Six, Deed No. 8527 (Condominium No. 9), is held in the name of Roxana Elizabeth Caro Elenes, RCQ's daughter. RCQ purchased this property on or about July 25, 1983.

  g. Defendant Property Seven, Deed No. 8187 (Lote 29B, Mza 145), is held in the name of Roxana Elizabeth Caro Elenes, RCQ's daughter. RCQ purchased this property on or about March 25, 1983.

  h. Defendant Property Eight, Deed No. 8186, is held in the name of Roxana Elizabeth Caro Elenes, RCQ's daughter. RCQ purchased this property on or about March 25, 1983.

## FIRST CLAIM FOR RELIEF

25. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if fully set forth herein.

26. The Defendant Properties represent property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," which includes a violation of the Controlled Substances Act, 21 U.S.C. §§ 801, et seq.

27. As a result, the Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 as if fully set forth herein.

29. The Defendant Properties constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. §§ 801, et seq., or proceeds traceable to such an exchange.

30. The Defendant Properties are therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, Plaintiff, United States of America prays that: due process issue to enforce the forfeiture of the Defendant Properties; due notice of these proceedings be given to all interested persons to appear and show cause why forfeiture should not be decreed; this Court decree forfeiture of the Defendant Properties to the United States of America for disposition according to law; and for such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Dated: Brooklyn, New York
July 22, 2021

JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
*Attorney for Plaintiff*
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

By: _____
Brendan G. King
Assistant United States Attorney
(718) 254-6006

# VERIFICATION

Fernando X. Cruz hereby declares as follows:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read the corrected verified complaint <u>in rem</u> in this action and know the contents thereof.

3. The matters contained in the corrected verified complaint <u>in rem</u> are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers, and the official files and records of the Drug Enforcement Administration and other law enforcement agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated: Brooklyn, New York
July 22, 2021

Fernando X. Cruz
Special Agent
Drug Enforcement Administration